```
                     UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


ROBERT GINSBERG,
     Plaintiff,



            v.                          CIVIL ACTION NO.
                                        11-10416-MBB


PROVIDENT LIFE AND ACCIDENT
INSURANCE COMPANY,
     Defendant.
```

### MEMORANDUM AND ORDER RE:
### PLAINTIFF'S MOTION TO DIMISS THE DEFENDANT'S COUNTERCLAIMS
### (DOCKET ENTRY # 48)

### November 7, 2013

**BOWLER, U.S.M.J.**

Pending before this court is a motion to dismiss filed by plaintiff Robert Ginsburg ("plaintiff" or "Insured"). (Docket Entry # 48). Plaintiff seeks to dismiss the counterclaims filed by defendant Provident Life and Accident Insurance Company[1] ("defendant" or "Insurer") for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Fed.R.Civ.P. ("Rule 12(b)(6)"). (Docket Entry # 48). After

---

[1] On October 3, 2013, this court allowed a motion to substitute Provident Life and Accident Insurance Company for Unum Group Corporation, the original defendant.

conducting a hearing on August 1, 2013, this court took the motion to dismiss (Docket Entry # 48) under advisement.

## STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Rule 12(b)(6), a court "accept[s] as true all well pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiffs." Gargano v. Liberty International Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009). "The general rules of pleading require 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. "This short and plain statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Id.

"To survive a motion to dismiss, the complaint must allege 'a plausible entitlement to relief.'" Fitzgerald v. Harris, 549 F.3d 46, 52 (1st Cir. 2008). While "detailed factual allegations" are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement for relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic v. Twombly, 550 U.S. 554, 555 (2007); Maldonado v. Fontanes, 563 F.3d 263, 266 (1st Cir. 2009); Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008). Additionally, "a well-pleaded

2

complaint may proceed even if . . . actual proof of those facts is improbable." Bell Atlantic v. Twombly, 550 U.S. at 556.

## FACTUAL BACKGROUND

Plaintiff obtained a disability insurance policy in 1989 from defendant. As set out in a May 1994 "statement of claim," plaintiff last worked on January 25, 1994. Defendant began providing disability benefits based on a diagnosis of fibromyalgia and chronic fatigue syndrome on or about January 25, 2994. The statement of claim identifies plaintiff's employer as "Riverworks Corporation," his job title as property manager and his job duties as "[d]emolition, repair and reconstruction." (Docket Entry # 47, Ex. B). Plaintiff sought disability benefits for a "Total Disability," meaning that he could no longer perform the "substantial and material duties of (his) occupation" and was being treated by a physician for the disability. (Docket Entry # 47, Ex. A).

To continue receiving benefits, the insurance policy required plaintiff to submit periodic reports of his activity. (Docket Entry # 47). The periodic reports of plaintiff's activities from 1994 to February 2008 uniformly depict his activities at the time as reading, sleeping and eating. Beginning in September 2002, the Insurer required plaintiff to complete an additional form concerning his work activities and income, if any. These forms asked plaintiff if he had been at

his place of business or engaged in any work activity for payment during his claimed period of disability. From the outset and continuing to February 2008, plaintiff checked the "No" box on each form.

Facts in the counterclaim demonstrate that the statements were not true. For example, in 1997 plaintiff formed Riverworks Investment Company ("Riverworks") or, at a minimum, signed the company's articles of incorporation as the incorporator. The company provided property management services for two, large apartment complexes in North Carolina. Plaintiff owned 100% of the company and was the president, treasurer and director. Since 1997, he regularly traveled to North Carolina and, from 2002 through 2006, earned wages ranging from $61,500 to $85,500.

A representative of the Insurer interviewed plaintiff in September 2005. During the interview, plaintiff denied involvement with two other companies and did not disclose his involvement in Riverworks. After the interview, the Insured requested copies of plaintiff's business and personal tax returns on 12 different occasions from May 2007 to March 2008. Plaintiff refused to provide the tax returns. In April 2008, defendant ceased distributing disability benefits because plaintiff refused to cooperate with defendant by failing to submit the requested information. (Docket Entry # 47, ¶ 18 & Ex. D).

4

Plaintiff filed suit on March 10, 2011.  The complaint sets out three counts:  breach of contract, breach of contract in bad faith and breach of the implied covenant of good faith and fair dealing.  (Docket Entry # 1).  Defendant filed a counterclaim on June 6, 2013, to recover $534,041 in disability benefits paid to plaintiff.  The counterclaim sets out two causes of action, one for breach of contract and the other for misrepresentation. (Docket Entry # 47).  Plaintiff seeks to dismiss the counterclaim because:  (1) the insurance policy does not provide for counterclaims; and (2) Massachusetts General Laws chapter 175, section 110A ("section 110A") bars legal action from the insurer.  Defendant opposes the motion.  (Docket Entry # 50).

## DISCUSSION

A.  Disability Insurance Contract

In seeking to dismiss the counterclaim, plaintiff argues that defendant cannot file a counterclaim because the insurance contract does not provide for legal action against the Insured. Plaintiff points to language under "Legal Actions" in the insurance policy:

> You may not start a legal action to recover on this policy within 60 days after you give us required proof of loss. You may not start such action after three years from the time proof of loss is required.

Plaintiff submits that this language bars a counterclaim from defendant because it does not explicitly reserve the right to bring suit.  (Docket Entry # 49).

Massachusetts courts utilize general rules of contract interpretation to construe an insurance policy.  Brazas Sporting Arms, Inc. v. American Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000) ("[u]nder Massachusetts law, we construe an insurance policy under the general rules of contract interpretation").  A policy's actual language is "given its plain and ordinary meaning" considering "'what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.'"  Id.; accord Fid. Co-op. Bank v. Nova Cas. Co., 726 F.3d 31, 36-37 (1st Cir. 2013) (courts "begin with the actual language of the policies, given its plain and ordinary meaning" and enforce provisions "according to their terms and interpreted in a manner consistent with what an objectively reasonable insured would expect to be covered") (internal citations omitted); see also Gargano v. Vigilant Ins. Co., 2011 WL 3420423, at *6 (D.Mass. Aug. 4, 2011) (court "'construe[s] the words of the policy according to the fair meaning of the language used, as applied to the subject matter'").

In the event words of a policy "are not ambiguous, 'they must be construed in their usual and ordinary sense.'"

Scottsdale Ins. Co. v. Torres, 561 F.3d 74, 77 (1st Cir. 2009); accord Nascimento v. Preferred Mut. Ins. Co., 513 F.3d 273, 276 (1st Cir. 2008) (absent an ambiguity, words of insurance policy are construed "in their usual and ordinary sense"). An "[a]mbiguity exists when the policy language is susceptible to more than one meaning." Scottsdale Ins. Co. v. Torres, 561 F.3d at 77; Genuine Bukuras v. Mueller Group, LLC, 592 F.3d 255, 262 (1st Cir. 2010) ("ambiguity requires language susceptible of more than one meaning so that reasonably intelligent persons would differ as to which meaning is the proper one"). An ambiguity does not exist "simply because the parties offer different interpretations of the policy language." Scottsdale Ins. Co. v. Torres, 561 F.3d at 77.

The language in the insurance policy sets out restrictions but not a total bar upon an Insured's ability to file a legal action. It does not address or mention the Insurer's ability to file a legal action against an Insured. The absence of a provision restricting the Insurer's ability to file or pursue a "Legal Action" does not protect plaintiff from a counterclaim. Indeed, such a restriction is illogical because it would result in an inability by the Insurer to raise or challenge any issues in court. Accordingly, the contract language does not restrict or bar a counterclaim filed by an Insurer in response to a "Legal Action" filed by the Insured.

B.  <u>Section 110A</u>

Plaintiff next moves to dismiss the counterclaim because section 110A protects plaintiff's insurance benefits.  Section 110A reads as follows:

> So much of any benefit under a policy of insurance insuring against disability from injury or disease as does not exceed four hundred dollars for each week during any period of disability covered thereby shall not be liable to attachment, trustee process or other process, or to be seized, taken, appropriated or applied by any legal or equitable process or by operation of law, either before or after payment of such benefit, to pay any debt or liabilities of the person insured under such policy, but this exemption shall not apply where an action or suit is brought to recover for necessaries contracted for during said period and the writ or bill of complaint contains a statement to that effect.

Mass.Gen.L. ch. 175, § 110A.

Statutory interpretation "always starts with the language of the statute itself."  <u>Matamoros v. Starbucks Corp.</u>, 699 F.3d 129, 134 (1st Cir. 2012) (interpreting Massachusetts law).  Typically, "the ordinary meaning of the statutory language" applies.  <u>Id.</u>  "[R]esort to extrinsic aids to statutory construction (such as legislative history)" is appropriate "only when the wording of the statute is freighted with ambiguity or leads to an unreasonable result."  <u>Id.</u>  Interpreting the particular words in a statute is further guided by the statutory framework and the purpose of the statute.  See <u>Dolan v. U.S. Postal Service</u>, 546 U.S. 481, 486 (2006) ("[i]nterpretation of a word or phrase depends upon reading the whole statutory text,

considering the purpose and context of the statute" and "precedents or authorities that inform the analysis"); Lawson v. FMR LLC, 670 F.3d 61, 68 (1st Cir. 2012) (circuit "and Supreme Court precedent require" examination of "broader statutory framework, including particularly the nearby language and the title and caption"); United States v. Dowdell, 595 F.3d 50, 71 (1st Cir. 2010) ("'[i]t is a well-established canon of statutory construction that a court should go beyond the literal language of a statute if reliance on that language would defeat the plain purpose of the statute'") (brackets in original).  "[S]ettled principles of statutory construction" also dictate examining and first determining "whether the statutory text is plain and unambiguous."  Hernandez-Miranda v. Empresas Diaz Masso, Inc., 651 F.3d 167, 171 (1st Cir. 2011).

Section 110A creates an exemption[2] from attachment or trustee process for "any benefit under a policy of insurance insuring against disability" up to $400 "each week during any period of disability covered thereby . . .."  Mass.Gen.L. ch. 175, § 110A; see Rosenthal v. Maletz, 78 N.E.2d 652, 654 (Mass. 1948) (section 110A creates "partial exemption of disability insurance from legal or equitable process") (dicta).  The term "period of disability covered thereby" refers back to the

---

[2]  The language of the statute expressly refers to "this exemption."  Mass. Gen. L. ch. 175, § 100A.

9

"policy of insurance." Consequently, in order to invoke the exemption there must be "a policy of insurance" and a "period of disability covered thereby" during which the insured received a benefit.

In opposing summary judgment, defendant argues that plaintiff was not entitled to disability benefits under the policy. The facts in the counterclaim, taken as true, support defendant's position. Because the statutory language of section 110A applies to "any period of disability *covered*" by the insurance policy, defendant's argument in light of the facts in the counterclaim bar a Rule 12(b)(6) dismissal of the counterclaim. In addition, plaintiff was receiving a monthly disability benefit in excess of the $400 per week exemption. (Docket Entry # 47).

Plaintiff's reliance on Liberty Mutual Ins. Co. v. Rosenthal, 204 F.Supp.2d 140, 143 (D.Mass. 2002), is also misplaced. Rosenthal involved a judgment creditor seeking to recover a jury verdict in a civil RICO case. This case involves an insurance company seeking to terminate future benefits as well as recoup benefits paid under the company's disability policy.

## CONCLUSION

For the foregoing reasons, the motion to dismiss (Docket Entry # 30) is **DENIED**. The deadline to file a dispositive

motion case was four months ago in this 2011 case.  Accordingly, this court will have a hearing on December 2, 2013, at 3:00 p.m. to set a trial date and hear argument on the motion to compel. (Docket Entry # 57).

/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge